UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICK BROSMER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )    Case No. 4:03 CV 198 HEA (LMB) |
| | ) |
| DAVE DORMIRE, and | ) |
| JEREMIAH "JAY" NIXON,[1] | ) |
| | ) |
| Respondents. | ) |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on the petition of Patrick Brosmer for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

**Procedural History**

Petitioner is presently incarcerated at the Missouri State Penitentiary in Jefferson City, Missouri, pursuant to the judgment and sentence of the Circuit Court of the City of St. Louis, Missouri. Petitioner was found guilty after a jury trial of forcible rape, forcible sodomy, third degree assault, violation of adult abuse order, and harassment. He was sentenced as a prior and persistent offender to a term of twenty years imprisonment on the forcible rape and forcible sodomy counts, to be served consecutively, one year of imprisonment on the third degree assault count, violation of adult abuse order count, and harassment count, to be served consecutively

---

[1]The Attorney General of the State of Missouri is a proper party respondent, because petitioner is challenging present and future sentences in this action. See Rule 2 (b), Rules Governing Section 2254 proceedings in the United States District Courts.

- 1 -

with the forcible rape and forcible sodomy counts and concurrently with each other, for a total of forty-one years imprisonment.  See id.

Petitioner raised one point on direct appeal of his convictions.  Petitioner argued that the trial court plainly erred in overruling defense counsel's objection to the victim's testimony about prior physical abuse because it constituted inadmissable propensity evidence of uncharged crimes and was not logically or legally relevant.  On February 19, 2002, the Missouri Court of Appeals for the Eastern District affirmed petitioner's convictions in an unpublished order opinion.  The Court declined to review petitioner's claim for plain error because petitioner failed to include this allegation of error in his motion for new trial.

Petitioner then filed a pro se motion to recall the mandate of the Missouri Court of Appeals on November 22, 2002.  In this motion, petitioner alleged that the Missouri Court of Appeals had no jurisdiction over his appeal because the indictment was amended to include additional counts without holding a preliminary hearing.  The Missouri Court of Appeals for the Eastern District denied petitioner's motion to recall the mandate.

On February 25, 2003, petitioner filed a petition for a writ of habeas corpus, raising two grounds for relief.  See Document Number 4.  Petitioner first argues that the trial court erred in admitting testimony about petitioner's history of physically abusing his wife.  See id.  Petitioner next argues that the Missouri Court of Appeals erred in not sua sponte addressing alleged defects in the indictment, which resulted in a due process violation.  See id.  On April 11, 2002, respondent filed a Response to Show Cause Order, in which respondent argues that petitioner's grounds for relief are procedurally defaulted. (Doc. No. 6).  On October 23, 2003, the court issued an order directing plaintiff to fully address the merits of petitioner's grounds for relief.

(Doc. No. 9). Respondent filed a Supplemental Response on December 5, 2003, in which he argues that petitioner's grounds for relief are procedurally defaulted and they fail on their merits as well. (Doc. No. 15).

**Facts**

The sufficiency of the evidence is not in dispute. The evidence adduced at trial revealed that on December 9, 1999, defendant raped, sodomized, and assaulted his wife, Wendy Brosmer. On December 13, 1999, Ms. Brosmer obtained an order of protection against petitioner. On December 14, 1999, petitioner broke into Ms. Brosmer's house and Ms. Brosmer called the police. Petitioner made about four threatening telephone calls to Ms. Brosmer that night.

**Discussion**

**I.    Standard of Review**

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct.

1495 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if "the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." 529 U.S. at 413, 120 S. Ct. at 1523. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." Id. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 120 S. Ct. 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 1410, 120 S. Ct. 522.

## II. Petitioner's Claims

Petitioner raises two grounds for relief. The undersigned will address each ground for relief in turn.

### 1. Ground One

In his first ground for relief, petitioner argues that the trial court erred in admitting testimony about petitioner's history of physically abusing his wife. Petitioner claims that this testimony constitutes inadmissable propensity evidence of uncharged crimes and its admission violated his due process rights. Respondent argues that petitioner has procedurally defaulted this claim by not including it in his motion for new trial. Respondent contends that petitioner's claim fails on its merits as well because the testimony in question helped to establish petitioner's motive

and intent in committing the crimes of rape and third degree assault on his wife.

Petitioner raised this same claim on direct appeal of his convictions. The Missouri Court of Appeals declined to review petitioner's claim, even for plain error, because petitioner failed to raise this claim in his motion for new trial.

It is well-established that the procedural default rule requires a habeas petitioner to pursue all available avenues of relief in the state courts before the federal courts can consider the claim. See 28 U.S.C. § 2254(b); Duvall v. Purkett, 15 F.3d 745, 746 (8th Cir. 1994). In addressing this issue, a federal court must give deference to state courts and should place great importance on state procedural rules. See Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989). By virtue of these considerations, "[a] federal court can consider the merits of a habeas corpus petition only when the prisoner has 'fairly presented to the state courts the substance of his [or her] federal habeas corpus claim.'" Id. (quoting Martin v. Solem, 801 F.2d 324, 330 (8th Cir. 1986)(internal citations omitted). To avoid procedural default, "Missouri procedure requires that a claim be presented 'at each step of the judicial process.'" Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994)(quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)), cert. denied, 513 U.S. 983, 115 S. Ct. 462, 130 L.Ed.2d 370 (1994). If a petitioner cannot demonstrate cause, then the court need not determine whether the petitioner has suffered actual prejudice. See Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir. 1987), cert. denied, 485 U.S. 907, 108 S. Ct. 1080, 99 L.Ed.2d 239 (1988).

In the instant case, petitioner failed to raise this claim in his motion for new trial. Petitioner alleges no reason as to why he did not raise this claim in his motion for new trial. Further, petitioner did not file a motion for postconviction relief challenging trial counsel's failure

to raise the claim. As such, petitioner cannot allege trial counsel's actions as cause to excuse his procedural default. Thus, this claim is procedurally defaulted.

Even if petitioner had not procedurally defaulted this claim, the claim fails on its merits as well. Generally, questions concerning the admissibility of evidence are matters of state law, and the issue on habeas review is not whether the evidence was properly admitted under state law. See Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991). Rather, evidentiary issues form the basis for habeas relief only if the error constitutes an independent constitutional violation. See Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Id. (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. See Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996).

At trial, the following exchange took place during the State's direct examination of petitioner's wife, Wendy Brosmer:

> [PROSECUTOR]: And did your relationship [with petitioner] at some point become violent?
>
> [MS. BROSMER]: Yes.
>
> [PROSECUTOR]: And when was that?
>
> [MS. BROSMER]: Right after we were married.
>
> [PROSECUTOR]: And what happened?
>
>> [DEFENSE COUNSEL]: I will object to this, Your Honor. It's evidence of other

crimes. It's irrelevant to the events charged. It's back to 1998.
[PROSECUTOR]: Judge, I have case law if you would like me to approach.
[THE COURT]: Approach, please.
(Counsel approached the bench and the following proceedings were had).
* * *

[THE COURT]: Objection overruled. You are welcome to proceed.
[PROSECUTOR]: Thank you, Your Honor.

[PROSECUTOR]: At what point did the relationship become violent?

[MS. BROSMER]: Shortly after the marriage.

[PROSECUTOR]: And can you describe that to the jury?

[MS. BROSMER]: There was quite a few of them. That particular one, he–I was at home, and he had came in, and he was drinking. I was asleep, and he literally head-butted me in the face in front of my daughter.

[PROSECUTOR]: Okay. How many times during your marriage did the defendant assault you?

[MS. BROSMER]: Many. I don't know an exact amount, but it was very frequent.

[PROSECUTOR]: How often would you say it happened?

[MS. BROSMER]: Maybe once every two weeks.

[PROSECUTOR]: And what is–what were the kinds of injuries you suffered from the defendant?

[MS. BROSMER]: My ankle was hurt. I was placed on crutches. Wrists, bruises, lumps on my head, hair pulling, scratches, black eyes, bloody noses.

[PROSECUTOR]: And did the defendant ever threaten you?

[MS. BROSNER]: Numerous times.

[PROSECUTOR]: And what were the kind of things that he said to you?

[MS. BROSNER]: That if I ever had him arrested for it that he would take me down because he had nothing to lose.

[PROSECUTOR]: And did you ever call the police?

[MS. BROSNER]: Many times.

[PROSECUTOR]: And what happened when the police came?

[MS. BROSNER]: Usually they would make him leave.

[PROSECUTOR]: Was he ever arrested?

[MS. BROSNER]: No.

[PROSECUTOR]: And why did you stay with him?

[MS. BROSNER]: Because he would always tell me that it won't happen again. He was sorry. I wanted to try to make the marriage work. And I tried to believe in him. I was scared. And times that I did leave he would find me and it would just be worse.

[PROSECUTOR]: And when you say "be worse," how would it be worse?

[MS. BROSNER]: He would be more angry and hit on me more.

[PROSECUTOR]: Did you ever go to the hospital?

[MS. BROSNER]: Yes.

[PROSECUTOR]: And what injuries did you go to the hospital for?

[MS. BROSNER]: The last one? Or just all of them?

[PROSECUTOR]: All of them.

[MS. BROSNER]: I would go in and for my wrist. I would get an ace bandage on that. Once I was on crutches. Once was for a neck injury.

(Tr. 202-09).

Petitioner's ground for relief fails because the testimony in question shows opportunity and knowledge. Typically, evidence of prior bad acts is not admissible under Federal Rule of Evidence 404 "solely to prove the defendant's criminal disposition." United States v. Jackson, 278 F.3d 769, 771 (8th Cir. 2002). The Missouri courts are in accord, consistently holding that

"[a] criminal defendant has the right to be tried only for the crimes for which he has been charged." State v. Mahoney, 70 S.W.3d 601, 605 (Mo. Ct. App. 2002) (quoting State v. Watson, 968 S.W.2d 249, 253 (Mo. Ct. App. 1998)). Evidence of other crimes or bad acts can be highly prejudicial and allowing such evidence to be admitted runs afoul of the rule preventing usage of a defendant's character to infer guilt. See id.

> However, Federal Rule of Evidence 404 (b) states:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404 (b) (2005). Missouri courts are in accord with the federal rules, holding that evidence of other crimes or wrongs can be admitted to establish: (1) motive, (2) intent, (3) absence of mistake or accident, (4) common plan or scheme embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, (5) the identity of the person charged with the commission of the crime on trial. See State v. Sladek, 835 S.W.2d 308, 311 (Mo. 1992).

In this case, the testimony of Ms. Brosmer was relevant to show petitioner's motive and intent in committing the crime of third degree assault on Ms. Brosmer. This testimony demonstrated plaintiff's motive and intent to cause physical harm to his wife. Missouri courts have held that evidence of prior uncharged misconduct against the same victim in murder and assault cases is relevant to establish the defendant's hostility towards the victim and his motive to injure her. See State v. Wright, 30 S.W.3d 906, 913 (Mo. Ct. App. 2000); State v. Smotherman,

993 S.W.2d 525, 528-29 (Mo. Ct. App. 1999). The evidentiary ruling at issue did not deprive petitioner of due process because it was not "so conspicuously prejudicial or of such magnitude as to fatally infect the trial." Bounds, 181 F.3d at 1119. Moreover, petitioner has failed to demonstrate a reasonable probability that the admission of the evidence affected the trial's outcome. See Meadows, 99 F.3d at 283.

Accordingly, the undersigned recommends that this ground for relief be denied.

**2. Ground Two**

In his second ground for relief, petitioner argues that the Missouri Court of Appeals erred in not sua sponte addressing alleged defects in the indictment, which resulted in a due process violation. Specifically, petitioner claims that Counts III, IV, and V, charging misdemeanor assault, misdemeanor violation of an adult abuse protective order, and misdemeanor harassment, were added in an amended information following the felony indictment for forcible rape and forcible sodomy. Petitioner argues that it was improper to add these counts without holding a preliminary hearing and that the assault count violates double jeopardy because it charges the same conduct as the rape and sodomy counts. Defendant contends that petitioner has procedurally defaulted this claim by not raising it on direct appeal. Defendant also argues that this claim fails on its merits because petitioner did not request a preliminary hearing, and no double jeopardy violation occurred because forcible rape, forcible sodomy, and third degree assault each contain an element not required by the other offenses.

Petitioner did not raise this claim on direct appeal of his convictions. Further, petitioner does not allege cause for his failure to raise this claim on appeal. As such, plaintiff has procedurally defaulted this claim.

Even if petitioner had not procedurally defaulted this claim, the claim fails on its merits as well. On February 1, 2000, petitioner was indicted for the felonies of forcible rape and forcible sodomy. (Legal File at 10-11). On April 6, 2000, a substitute information in lieu of indictment was filed, which added the misdemeanor charges of third degree assault, violation of order of protection, and harassment. (Legal File at 27-29). The docket sheet indicates that petitioner never requested a preliminary hearing on these charges. (Legal File at 2-3).

Missouri Supreme Court Rule 23.08 provides in part: "[a]ny information may be amended or an information may be substituted for an indictment at any time before verdict or finding if no additional or different offense is charged and a defendant's substantial rights are not thereby prejudiced." However, "[b]y proceeding to trial without objection, [a] [d]efendant waive[s] his right to object to proceeding on the amended information." State v. Turner, 94 S.W.3d 464, 467 (Mo. Ct. App. 2003). See State v. Simpson, 846 S.W.2d 724, 726 (Mo. 1993). Further, an accused waives his right to object to the absence of a preliminary hearing when the accused proceeds to trial without an objection. See Simpson, 846 S.W.2d at 728.

In this case, the substitute information added three additional misdemeanor charges. However, petitioner did not request a preliminary hearing on the additional charges, nor did he object to the filing of the additional charges. Further, the additional charges were filed on April 6, 2000, and petitioner's trial did begin until January 22, 2001, over eight months after the filing of the additional charges. As such, petitioner had sufficient notice of the charges and ample time in which to object to the charges. Thus, petitioner's due process rights were not violated by the filing of the additional charges.

Further, no violation of double jeopardy occurred by charging petitioner with third degree

assault in addition to forcible rape and forcible sodomy.  The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5.  "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."  Blockburger v. U.S., 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L.Ed. 306 (1932).

Petitioner was charged with forcible rape, in violation of Section 566.030 RSMo, which provides in relevant part:

> [a] person commits the crime of forcible rape if such person has sexual intercourse with another person by the use of forcible compulsion.  Forcible compulsion includes the use of a substance administered without a victim's knowledge or consent which renders the victim physically or mentally impaired so as to be incapable of making an informed consent to sexual intercourse.

Petitioner was also charged with forcible sodomy, in violation of Section 566.060 RSMo, which states:

> [a] person commits the crime of forcible sodomy if such person has deviate sexual intercourse with another person by the use of forcible compulsion.  Forcible compulsion includes the use of a substance administered without a victim's knowledge or consent which renders the victim physically or mentally impaired so as to be incapable of making an informed consent to sexual intercourse.

In addition, petitioner was charged with third degree assault, in violation of Section 565.070, RSMo, which provides in relevant part:

> [a] person commits the crime of assault in the third degree if:
> (1) The person attempts to cause or recklessly causes physical injury to another person; or
> (2) With criminal negligence the person causes physical injury to another person by means of a deadly weapon; or
> (3) The person purposely places another person in apprehension of immediate physical injury; or

> (4) The person recklessly engages in conduct which creates a grave risk of death or serious physical injury to another person; or
> (5) The person knowingly causes physical contact with another person knowing the other person will regard the contact as offensive or provocative; or
> (6) The person knowingly causes physical contact with an incapacitated person, as defined in Section 475.010 RSMo, which a reasonable person, who is not incapacitated, would consider offensive or provocative.

These three offenses each contain an element not required by the other offenses. Specifically, forcible rape requires that a person have sexual intercourse with another person by the use of forcible compulsion, forcible sodomy requires that a person have deviate sexual intercourse with another person by the use of forcible compulsion, and third degree assault requires that a person place another person in apprehension of immediate physical injury. As such, no double jeopardy violation occurred.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

**III.    Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997)(citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)); Tokar v. Bowersox, 1 F. Supp.2d 986, 1016 (E.D. Mo. 1998). In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

**RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the petition of Patrick Brosmer for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.

The parties are advised they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this   24th   day of February, 2006.

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE